# CITY OF CHICAGO

*v.*

# MARGARET HISLOP.

1. HIGHWAY IN THE CITY. A tunnel under the Chicago river in the city of Chicago is one of its highways, and as such, it was the duty of the city to use all reasonable efforts to keep it in a safe condition for travel; and if that could not be done without stoppage of travel for a time, then the approaches should have been so guarded as to prevent persons from entering therein, or in some manner warned of the danger. Or it should have been closed. It was negligence to keep it open for passage, to the peril of life.

2. SAME—*in dangerous condition.* When the tunnel leaked, and large quantities of ice had formed on the foot way, and about the middle of it, where the peril was the greatest, the ice had been chipped up and not removed, and could not be seen until the passenger was in its midst, the footway was unsafe and very dangerous, and had so remained a long time before the accident. In its dangerous condition, it was the duty of the city either to have barred all ingress or to have given notice of the probable danger, and where the person injured was guilty of no want of care, the city must be held liable.

3. NEW TRIAL—*newly discovered evidence.* Where the newly discovered evidence is inconclusive in its character, and such as, if it had been heard on the trial, and the verdict against it, the court would not have set the verdict aside, a new trial should not be granted, that it might be admitted before another jury. It is only under very peculiar circumstances that a new trial will be granted to enable the impeachment of witnesses.

APPEAL from the Circuit Court of Cook county.

Mr. I. N. STILES, for the appellant.

Messrs. WINSTON, CAMPBELL & WILLARD, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

It is assumed that the verdict in this case was against the law and the evidence; that the city had used reasonable care, diligence and skill in the construction and oversight of the tunnel, where the injury occurred; and that a new trial should have been granted, on account of new and material evidence, discovered since the trial, which shows negligence on the part of appellee.

The law of the case is simple, and was correctly expounded to the jury in the instructions given, and of which no complaint is made.

It was admitted, upon the trial, that the footway of the tunnel, where the leg of appellee was broken by a fall upon the ice, was a public highway of the city of Chicago. As such, it was the duty of the city to use all reasonable efforts to keep it in a safe condition for travel, and if this could not be done without a stoppage of the travel for a time, then the approaches to the tunnel should have been so guarded as to prevent persons from entering therein, or they should, in some manner, have been warned of the danger. This dark passage-way, under ground, in its condition at the time of the accident, should have been closed. It was negligence to keep it open, and thus entrap passengers into it, to the peril of life and limb.

If there was no negligence on the part of the party injured, the city was clearly liable.

The tunnel leaked, and large quantities of ice accumulated on the footway. About the middle of it, where the peril was the greatest, the mass of ice, which had been chipped up and not removed, could not be perceived until the passenger was

in the midst of it.   It is not denied that the footway was, at the time, unsafe; indeed, extremely dangerous.

The evidence shows that the injury occurred on the 6th of March; that for four weeks previous thereto the footway was dangerous; that the chopped ice was of the depth of six inches, and in some places more; that about the middle of the tunnel the entire footway was covered with ice; that persons frequently fell down in passing through it, and that, from the 1st of February until the 6th of March, it had been closed a part, and sometimes the whole, of certain days.

During all this time the city employed laborers to plug up the holes and prevent the leakage of the water, and to cut up the ice and remove it; but the water continued to leak and the ice to accumulate.   A policeman was also stationed there, but he warned no one of the danger.

Under the facts, and in the exercise of proper precaution, and' with due regard to the safety of passengers, it was the duty of the city either to bar all ingress to this perilous way, or to give notice of the probable danger, that it might have been avoided.

There is no proof of want of due care on the part of appellee.   She testified that any danger of the footway did not occur to her until about the middle of the tunnel, where it was not well lighted, and that she endeavored to exercise proper care.

Her daughter testified that she neither knew nor had heard of any danger when they entered the tunnel.

Mrs. Doyle, who accompanied appellee, testified that they had no knowledge of the ice until entrance into the tunnel.

We do not think, therefore, that the verdict was against either the law or the evidence.

Should a new trial have been granted on account of the newly discovered evidence?

The affidavit upon which the motion was based sets forth substantially that, on the 6th of March, affiant met two women and a young girl, who were apparently intending to pass

through the tunnel; that he said to them: "It is almost impassable; it isn't safe for any person to try it, especially a lady; you might get your limbs broke;" and that affiant had no doubt that appellee, her daughter, and Mrs. Doyle, were the persons accosted by him.

The affiant does not state that he had ever met the parties before the 6th of March, 1869, or between that time and the date of the affidavit, in January, 1871. The meeting at the tunnel was casual and momentary, and nearly two years had elapsed since that time and the making of the affidavit.

The three persons referred to in the affidavit had, upon the trial, denied all knowledge of the dangerous condition of the tunnel, until they had arrived at the center of it.

This evidence, discovered since the trial, is not conclusive. We should feel compelled to sustain the verdict, even if the additional evidence had been considered by the jury. The only effect of it would be to lessen the credibility of the witnesses upon the other side. A new trial will never be granted merely for the impeachment of a witness, unless under very peculiar circumstances. *Martin* v. *Ehrenfels,* 24 Ill. 187; *O'Riely* v. *Fitzgerald,* 40 Ill. 311.

We do not think that the demands of justice would be subserved by granting a new trial.

The judgment is affirmed.

*Judgment affirmed.*